J. Howard Smith *vs.* James M. Pendleton.

JANUARY 18, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

MURDOCK, J. This action in assumpsit was tried by a justice of the Superior Court sitting without a jury. A decision was rendered in favor of the plaintiff and the case is here on defendant's exceptions to the decision and to rulings on the admissibility of testimony.

The defendant is manager of the Westerly Branch of the Industrial Trust Co., a banking corporation having its principal office in the city of Providence. Said trust company was executor and trustee under the will of Elias F. Wilcox who in his lifetime owned the controlling interest in the Wilcox Fertilizer Co., a corporation having its place of business in Mystic in the State of Connecticut.

Sometime in October, 1928, J. Waterman Wilcox, a nephew of Elias F. Wilcox, telegraphed the defendant from New York offering $275 a share for 600 shares of the capital stock of the Wilcox Fertilizer Co. As the Industrial Trust Co. held as trustee only 444 shares of said stock, it was necessary to obtain the consent of other holders of the same in order to meet the terms of this offer. This the defendant did and telegraphed J. Waterman Wilcox that his offer was accepted on condition that $10,000 be deposited, to be forfeited in case the sale was not consummated. On October 22 J. Waterman Wilcox went to the office of the defendant in Westerly and deposited with him $10,000 and received a receipt therefor as follows:

"The Wilcox Fertilizer Company of Mystic, Connecticut hereby acknowledges the receipt of Ten thousand Dollars ($10,000) from J. Waterman Wilcox of Mystic, Connecticut as part payment of $275.00 a share for 600 shares or more of the said Wilcox Fertilizer Company capital stock, the balance of the amount due on the 600 shares at $275.00 a share to be paid on or before October 27th, 1928 at twelve o'clock noon at the office of Industrial Trust Company, Westerly Branch, Westerly, Rhode Island, said $10,000.00 to be forfeited to said Wilcox Fertilizer Company if the balance of the aforesaid sum is not paid by the above date, namely, October 27th, 1928 at noon.

James M. Pendleton
President

Approved by
J. Waterman Wilcox."

The defendant, although president of said company, had no financial interest therein and acted in a representative capacity only. While the above receipt was signed by him as president in behalf of the Wilcox Fertilizer Co., it is clear from the record that he was acting not for the corporation but for certain stockholders.

On October 26, the day before the above option was to expire, J. Waterman Wilcox informed the defendant at the latter's office, that he would be unable to fulfill his contract on the next day. He then introduced the plaintiff whom, up to this time, the defendant had not met. What transpired at the subsequent interview is in dispute. The defendant's version is that the plaintiff said that he furnished the $10,000 paid for the option by J. Waterman Wilcox; that said sum was part of the purchase price of $60,000 which he agreed with said Wilcox to pay for the fish factory, plants, office building and equipment belonging to the Wilcox Fertilizer Co.; that he had with him certified checks for $50,000; that he was ready to complete his agreement to purchase and requested the defendant to accept the checks and transfer said property to him.

Defendant informed plaintiff that his position with respect to the property was that of trustee; that he had no authority to sell the same and suggested that plaintiff take up the option himself. This plaintiff was unwilling to do and asked defendant what he could do for him. Defendant, after telephoning to the main office of the Industrial Trust Co., told plaintiff that there was a possibility that the stock could be sold for $280 per share and that if sold at that price the $10,000 would be returned to plaintiff; that the plaintiff expressed himself as being satisfied with this arrangement.

The plaintiff's version is that the defendant, after telephoning, said that, if J. Waterman Wilcox would give up his option which would expire the following day, surrender certain formulae and agree to assist the prospective purchasers, that he would return the $10,000; that Wilcox agreed to these proposals and that the defendant promised to send the plaintiff a check the following week.

The defendant on October 26, the day when the above interview took place, gave an option on said shares to other parties for $280 a share and received a deposit of $10,000 to be forfeited if the option was not exercised. On November 1, 1928, defendant wrote the plaintiff as follows:

"My dear Mr. Smith:—

The matter of the sale of the stock of the above corporation was not consummated yesterday, and the would-be purchasers asked for a day or two in order to make some investigation of the company's affairs. If they should fail to complete the purchase it will be necessary to require the forfeiture of their deposit as well as yours.

If they do fail, would you care to take the matter up again?

This letter is confidential to you and I would not care to have the information reach Mystic, for a few days at least.

Very truly yours,

J. M. Pendleton."

To this letter the defendant received no reply beyond an acknowledgment of its receipt by plaintiff's secretary and a statement that she would call it to Mr. Smith's attention on his return from a trip to the South.

The holders of the second option having failed to exercise the same, defendant sold said stock at a price less than $275 a share and about November 20, 1928, divided the proceeds of the sale together with the money received on the two options, among the holders of said stock. About this time the plaintiff telephoned the defendant. There is a conflict of testimony as to the subject-matter of this conversation over the telephone. Defendant says that the plaintiff called up to ask for information as to the financial responsibility of J. Waterman Wilcox. Plaintiff says that he asked about the check for $10,000 which he alleges

defendant promised to send him. This conversation took place some time in November, 1928, and the present action was commenced in April, 1931.

The following questions of law are raised by the defendant's exceptions: (1) Whether there was a valid consideration for the alleged agreement to pay to the defendant $10,000; (2) whether the alleged agreement is void as being within the statute of frauds; (3) whether defendant, admittedly acting as an agent, can be held personally liable.

The defendant maintains that there was no consideration for the alleged promise to pay to the plaintiff $10,000 because J. Waterman Wilcox did not actually surrender the option which he received from the defendant, and that even though he did surrender it, such surrender was not a valid consideration for defendant's promise because the option would expire on the following day. It is true that J. Waterman Wilcox retained the document for the reason, as he says, that it was also a receipt for the money paid by him to the defendant for the option.

Actual surrender of the paper was not necessary to a surrender of the option. "The cancellation or recision of a written contract may be oral or by implied agreement which may be shown by the acts of the parties and the surrounding circumstances." 13 C. J. 601 (623-3).

J. Waterman Wilcox testified that he gave up the option in consideration of the promise of the defendant to pay to the plaintiff $10,000. If this testimony is to be believed, there was a consideration for the alleged promise of defendant. The consideration for a promise need not move from the promisee. It is sufficient if given by a third party. J. Waterman Wilcox held an option which was valid until its expiration on the following day. Having given it up, as he says, he was no longer in a position to enforce it and, therefore, a legal relation which theretofore existed between the defendant and himself was destroyed. The destruction of this legal relation was a valid consideration for the defendant's alleged promise. Restatement of the Law of Contracts of the American Law Institute, Sec. 73, (c).

The defendant's contention that the plaintiff cannot maintain this action because the defendant was acting as an agent—which fact was known to the plaintiff—is likewise without merit. Unless there is an agreement that an agent shall not be bound by reason of his agency, to avoid personal liability on a contract entered into by an agent in behalf of his principal, not only the fact that he is acting as an agent but also the identity of his principal must be made known to the other party to the contract and this is true even though such party knows that the agent is acting in a representative capacity.

The contention of the defendant, that the alleged contract was a contract to answer the debt or default of another and was therefore void by reason of the statute of frauds, is without merit. The alleged contract was directly between the parties to the suit, although the consideration for defendant's alleged promise came from a third party. *Bova v. Scorpio*, 43 R. I. 98.

There is no merit in the exception of the defendant to the exclusion of testimony. A witness was asked as to the ownership of certain formulae the delivery of which the plaintiff alleges was a part of the consideration for defendant's promise. This question was objected to on the ground that the witness was not in a position to answer the same because his connection with the corporation was too recent to permit an answer as of his own knowledge. The exception was sustained. But later in his testimony this same witness said: "It is my understanding they were corporation property and had always been considered such." The defendant therefore was not prejudiced by the ruling, as the witness gave the only answer which his knowledge of the matter permitted.

Although these questions of law raised by defendant's exceptions are determined contrary to his contentions, his exception to the decision must be sustained. It is evident from the record that the trial justice was so impressed with what he considered the moral aspects of the case that he

lost sight of the legal principles governing the same. At the outset of the case in a colloquy with counsel, he said: "There was a flat promise there that Mr. Pendleton had received this money which in good conscience he ought not to keep. Was it not his duty to return it?" And again: "I can see the picture quite plainly; the ten thousand dollars was in somebody's hands who was not entitled to it." He also expressed the opinion that the money could be recovered on the common counts even though there was no contract to return it. This is a misconception of the law applicable to the facts. Money is a medium of exchange. One who receives money in good conscience and has practiced no deceit or unfairness in obtaining it is under no legal obligation to return it to one from whom it has been obtained by deceit on the part of another. The defendant was a stranger to the transaction between the plaintiff and J. Waterman Wilcox and it is admitted he was no party to any misrepresentation which induced plaintiff to part with his money and had no knowledge either of the source of or the means by which J. Waterman Wilcox obtained the $10,000 paid for the option. This money was received by defendant in good faith as consideration for a contract and he was legally entitled to retain the same in accordance with the terms of the contract.

We have repeatedly held that findings of fact by a trial justice will not be disturbed unless clearly wrong. This rule presupposes the careful weighing of the testimony and an application of the law to the facts; but in the instant case it is apparent that the trial justice misconceived the law and his findings of fact were colored by this misconception. We therefore cannot give to his decision in this case that weight which ordinarily is given to a decision of a trial justice on questions of fact.

It is apparent that little if any consideration was given to the undisputed fact that the defendant was acting in a representative capacity and had no personal financial interest in any of the transactions relating to the stock of the Wilcox

Fertilizer Co. and was therefore not actuated by any motive of personal profit. No significance was apparently given to the letter of November 1, 1928 and the failure of the plaintiff to reply thereto, although this letter, from the plaintiff's standpoint, repudiated a contract entered into a few days previously to pay him $10,000.

The exception to the decision is sustained on the ground that the trial justice failed to give due weight to the evidence which on the record before us appears to preponderate in favor of the defendant.

The case is remitted to the Superior Court for Washington County for a new trial.

*Henry M. Boss, Jr., Francis M. Conlan, Elisha K. Camp, of New York City,* for plaintiff.

*Herbert W. Rathbun,* for defendant.