Jennifer M. RICHARD

v.

Gregory J. RICHARD

v.

Norman Richard.

No. 2004–258–Appeal.

Supreme Court of Rhode Island.

June 26, 2006.

Kathleen Managhan, Esq., Newport, for Plaintiff Jennifer Richard.

Lauren E. Jones, Esq., Providence, for Defendant Norman Richard.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

This appeal comes to us from the Family Court concerning the divorce of Jennifer M. Richard (Jennifer) from Gregory J. Richard (Gregory). The appellant, Norman Richard (Norman), Gregory's father, is aggrieved by a decree of the Family Court ordering him to convey certain real property, located at 99 Montgomery Street in Tiverton (Tiverton property), to Gregory and Jennifer, his former daughter-in-law, in accordance with the terms of a purported oral contract. This case came before the Supreme Court for oral argument on May 15, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth herein, we affirm the order of the Family Court.

## I

### Facts and Travel

Gregory and Jennifer were married in October 1995. Earlier that same year, Gregory and Jennifer had moved into the Tiverton property, then owned by Norman, as lessees, paying between $110 and $150 per week to Norman.[1] According to Gregory and Jennifer, the parties had discussed the couple's acquisition of the Tiverton property from Norman since 1997.

Jennifer testified that in the fall of 2000 Norman first agreed to sell the Tiverton property to the couple for a total price of $70,000. Gregory placed the date of this agreement closer to June 2001. Norman testified that he did have a discussion with Gregory regarding the Tiverton property, but denies that he agreed to sell it for $70,000. This agreement was never memorialized in writing.

The substance of that discussion is in dispute. Norman claims that he approached Gregory to discuss selling the Tiverton property. He said that Gregory informed him that the bank would lend Gregory the money to purchase the Tiverton property only if he could come up with 35 percent of the purchase price. Norman calculated this figure at $70,000. Norman testified that he agreed to help his son and Jennifer realize home ownership by acting as a bank to facilitate the young couple's savings: Gregory and Jennifer would pay him $140 per week, which he would keep, record, and amass until the $70,000 down payment amount was reached. Once the couple had attained the down payment amount, he presumably would release the funds so that a bank loan could be obtained. Norman testified that Gregory and Jennifer also paid $100 per week in rent in addition to the $140 payments.

The story offered by Jennifer and Gregory differed immeasurably. They insisted that Norman, in fact, offered to sell them the Tiverton property for a total purchase price of $70,000. Although the value of the home was stipulated to be in excess of $200,000, any additional consideration was found by the trial justice to be based on family affection. According to Jennifer, beginning in June 2001, she began paying Norman either $200 or $250 per week pursuant to the oral contract. Norman testified, and the record reflects, that pay-

---

1. Gregory testified at trial that he and Jennifer paid $150 per week in rent; Jennifer, however, claimed the figure was $110. We note that Jennifer was the person responsible for paying this obligation.

ments of $140, and later $100, were recorded in two ledgers—one kept at the Tiverton property and one kept at Norman's home. One of the ledgers subtracted the payments from the $70,000 purchase price. These notations were made in Norman's hand. According to Jennifer, the remaining amount of each week's payment was applied toward property taxes and homeowner's insurance.

Sometime after the agreement, Gregory and Jennifer undertook to improve the Tiverton property. Gregory testified that these improvements were done with Norman's approval. And the upgrades were extensive: the front of the home was landscaped; exterior lights were added; a new front door was installed; the front entry was retiled; an oak banister was installed; the living room was renovated; the kitchen was upgraded; three rooms were given new carpet and paint; several light fixtures and ceiling fans were added; and a sun porch was completed, which included the addition of French doors, drywall, and windows. On cross-examination, Jennifer testified that the tile in the front entry, the front door, the banister, the master bedroom, the last door in the sun porch, and one other bedroom were completed "after the actual purchase of the home," which she indicated was in March 2001.

In April 2002, Norman took out a $30,000 mortgage on the Tiverton property to pay bills. Earlier that month, Gregory had borrowed from him a total of $8,000 to buy a vehicle and a boat motor. Norman subtracted the $8,000 indebtedness from the $30,000 mortgage, leaving $22,000. Norman then subtracted the $22,000 from the remaining balance noted in the Tiverton property ledger. Jennifer testified that the $22,000 was deducted from the balance of the purchase price of the home because it was a lien on the property. Norman disagreed in part; while acknowl-

edging the lien, he also explained the deduction as an incentive to encourage Gregory and Jennifer to achieve their savings goal.

In October 2002, Gregory moved from the Tiverton property; he and Jennifer had separated. Once the divorce proceedings had commenced, Jennifer's relationship with Norman also deteriorated. The Tiverton property ledger revealed that payments to Norman ceased on October 4, 2002, which payment brought the outstanding balance to $38,100; Norman's personal ledger, however, showed payments made by Jennifer until November 1, 2002, at which point Norman made the notation "on hold."

A trial on whether the Tiverton property could be considered in the distribution of marital assets was held on several dates between July 2003 and April 2004. On March 26, 2004, the trial justice issued a bench decision, which was followed by a written judgment. The trial justice found by clear and convincing evidence that an oral agreement between Norman and the couple to convey the Tiverton property existed and was enforceable. The trial justice found that "in reliance on the agreement, [Jennifer] and [Gregory] made substantial improvements to the property and had possession of the property the entire time right up until the present date." The trial justice was persuaded that Norman agreed to sell the Tiverton property for $70,000, citing the fact that he had subtracted the balance of the $30,000 equity loan from the couples' outstanding balance. In addition, the trial justice found incredible Norman's explanation that he was holding the couple's payments for an eventual down payment, when the couple simply could have opened their own bank account. As to credibility, the trial justice found that Jennifer and Gregory were "forthright and truthful and candid in

their testimony." Conversely, he found Norman to be "lacking in credibility and quite frankly untruthful." In fact, the trial justice found Norman's testimony "to be devoid of believability and bordering on perjury."

The trial justice imposed a constructive trust on the Tiverton property, requiring Norman to convey the land to Jennifer and Gregory in exchange for the outstanding balance of $38,100, plus $7,800 in back rent. He also ordered that the couple would take the property subject to the equity loan taken out by Norman. Norman appealed to this Court pursuant to G.L.1956 § 14–1–52(a) challenging the trial justice's findings concerning ownership of the Tiverton property.[2]

## II

## Analysis

On appeal, Norman argues that the trial justice erred as a matter of law by concluding there existed an enforceable oral contract between Norman and the couple under the doctrine of part performance. Norman adds other claims as well.

## A

### Standard of Review

■ The applicability of the doctrine of part performance is a mixed question of law and fact. "[T]he findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this [C]ourt on appeal unless it can be shown that such findings are clearly wrong or the trial justice misconceived or over-

looked material evidence." *Tarro v. Tarro*, 485 A.2d 558, 564–65 (R.I.1984). In addition, this Court will not disturb a trial justice's "credibility determinations unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong." *Zaino v. Zaino*, 818 A.2d 630, 638 (R.I.2003). However, whether particular acts suffice to constitute part performance is a question of law. *See Simons v. Simons*, 134 Idaho 824, 11 P.3d 20, 23 (2000) (" 'What constitutes part performance must depend upon the particular facts of each case and the sufficiency of particular acts is a matter of law' "); *cf. Kates Corp. v. Kirshenbaum*, 122 R.I. 486, 491 n. 3, 409 A.2d 540, 543 n. 3 (1979) (stating that this Court "must treat the sufficiency of defendant's letter to satisfy [the statute of frauds] as a question of law rather than a question of fact"); *Smith v. Pendleton*, 53 R.I. 79, 84, 163 A. 738, 739 (1933) (recognizing the issue of "whether the alleged agreement is void as being within the statute of frauds" to be a question of law). "This Court reviews questions of law *de novo*." *1800 Smith St. Associates, LP v. Gencarelli*, 888 A.2d 46, 52 (R.I.2005).

## B

### Part Performance

■ General Laws 1956 § 9–1–4 sets forth this state's statute of frauds. It provides, in pertinent part, as follows:

"No action shall be brought:

"(1) Whereby to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or the

---

**2.** It appears that Norman, in his first notice of appeal, only contested the trial justice's imposition of an order restraining him from pursuing a trespass and ejectment action against Jennifer and Gregory, as well as the trial justice's determination that Norman was in contempt of the Family Court when he pur-

sued just such an action in the District Court. Despite Norman's assurances of further briefing on those issues, he has elected not to so brief the Court; therefore, we will not address them on appeal. *See* S.Ct. R.App. P. Art. I, Rule 12(A)(4).

making of any lease thereof for a longer time than one year;

"＊ ＊ ＊

"unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized."

One exception to this statute is that of part performance: When a party seeking enforcement of an oral contract "has performed to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, the court will disregard the requirement of a writing and enforce an oral agreement." *R.W.P. Concessions, Inc. v. Rhode Island Zoological Society*, 487 A.2d 129, 131 (R.I.1985). A court generally will enforce an alleged oral contract pursuant to the doctrine of part performance only if a party can adequately demonstrate, in reliance on said agreement, possession of the property, improvements thereon, or payment of a substantial part of the purchase price. *Pearl Brewing Co. v. McNaboe*, 495 A.2d 238, 242 (R.I.1985) ("[t]aking possession of property ＊ ＊ ＊ together with making improvements or paying a substantial part of the purchase price, is generally sufficient to avoid the bar of the statute of frauds"); *R.W.P. Concessions, Inc.*, 487 A.2d at 131 ("the terms of the agreement must be clear and the possession or improvements in reliance thereon must be substantial and clearly shown"). "[P]art payment of the purchase price, possession or making improvements severally might not be sufficient to remove the case, yet a combination of all may be." *Najarian v. Boyajian*, 48 R.I. 213, 215, 136 A. 767, 768 (1927). We note, however, that the statute of frauds is not to be taken lightly, and any partial performance must unequivocally indicate the existence of the purported oral agreement. *See Messner Vetere Berger McNamee Schmetterer Euro RSCG, Inc. v. Aegis Group PLC*, 93 N.Y.2d 229, 689 N.Y.S.2d 674, 711 N.E.2d 953, 956 (1999) ("Part performance alone, of course, is not sufficient. The performance must be unequivocally referable to the agreement."); 4 *Corbin on Contracts* (Statute of Frauds) § 18.11 (rev. ed.1997).

## 1

### Possession

■ Norman first argues that the trial justice erred in finding that Jennifer and Gregory satisfied the requisite possession prong of the part performance exception. He claims that Jennifer and Gregory took possession of the Tiverton property pursuant to an oral agreement to *rent* the premises long before the alleged oral promise for conveyance; therefore, Norman suggests, the possession could not have been pursuant to an oral contract to purchase the property.

■ Although the commencement of a possession contemporaneous to an alleged oral agreement typically might satisfy the possession requirement, a continued or existing possession will not necessarily preclude application of the part performance doctrine. In fact, the authorities are largely in accord that the operative inquiry is whether a possession adequately indicates the existence of an oral contract:

"The continuance in possession by a purchaser who is already in possession may, in a proper case, be sufficiently referable to the parol contract of sale to constitute a part performance thereof. There may be additional acts or peculiar circumstances which sufficiently refer the possession to the contract. So, a prior possession by the purchaser is not an absolute bar to proof of a change in the character of the possession after the making of a parol contract of sale, al-

though it may cast upon the purchaser the burden of showing that his continued possession is referable to the contract." *Herbstreith v. Walls*, 147 Neb. 805, 25 N.W.2d 409, 411 (1946) (quoting 49 Am. Jur. *Statute of Frauds* § 442 at 748); *see also Sutton v. Warner*, 12 Cal. App.4th 415, 15 Cal.Rptr.2d 632, 637 (1993) (adopting the rationale of *Herbstreith*); *Boesiger v. Freer*, 85 Idaho 551, 381 P.2d 802, 805 (1963) ("Competent evidence may clearly show that [a prior] possession, [continued] after the making of an oral contract, was definitely referable to the contract."); 4 *Corbin on Contracts* § 18.14 at 538; Restatement (Second) *Contracts* § 129 (1981).

In the present matter, sufficient competent evidence was presented to support a finding that the continued possession of the Tiverton property by Gregory and Jennifer adequately indicated the existence of the purported oral contract to constitute a part performance thereof. First, the ledger notations made in Norman's own hand begin on June 1, 2001, and indicate receipt of regular $140 payments, and later $100 payments, from Gregory and Jennifer, which were deducted from a $70,000 figure in one ledger. Both Gregory and Jennifer testified that this $70,000 figure represented the negotiated sale price of the Tiverton property. Jennifer testified that the remaining portion of the money paid weekly to Norman was applied to property taxes and insurance. Taken together, this is strong evidence that the nature of the possession of the Tiverton property had changed on or about the dates Jennifer and Gregory claimed as the date of actual contract formation.

Furthermore, many of the improvements were made to the property after the agreement. Norman's own son, Gregory, testified, in the face of contrary evidence from his father, that Norman permitted these improvements because the house rightfully belonged to Gregory and Jennifer. In light of this evidence, we think the possession of the Tiverton property by Gregory and Jennifer satisfied this element of the part performance doctrine.

**2**

**Improvements and Partial Payment**

Norman next challenges the trial justice's findings regarding improvements made to the Tiverton property. Under the part performance doctrine, improvements to land purportedly made in reliance upon an oral contract must indicate the existence of the contract in such a way that the improvements "would have been improvident to make in the absence of some such contract, so that they are strong circumstantial evidence of its existence." 4 *Corbin on Contracts* § 18.15 at 541. Improvements in reliance on an alleged oral contract ordinarily must be permanent. *R.W.P. Concessions, Inc.*, 487 A.2d at 132.

Norman first argues that the trial justice committed reversible error in deeming the improvements made to the Tiverton property to be "substantial" enough to trigger the part performance exception. He contends that the total cost of the improvements made after the agreement—which he values between $2,075 and $2,375—constituted slightly more than 1 percent of the stipulated value of the property, and thus could not be "substantial." Without even reaching whether Norman's assessment of the value of the improvements is factually accurate, we cannot agree with his argument.

First, we note that this Court has never held that the question of whether improvements suffice to constitute part performance turns upon their cost in relation to the total value of the improved property. In *R.W.P. Concessions, Inc.*, 487 A.2d at

131, 132, this Court did recognize that even a substantial expenditure of time and money was insufficient to constitute part performance when improvements to ready a concession stand were easily removable "at the termination of the operating relationship." Yet this is certainly not the case in the present matter, where Jennifer and Gregory imbued the Tiverton property with significant "sweat equity." Specifically, the addition of new doors and a banister, the replacement of floors, and the renovation of bedrooms—all of which Norman concedes took place after the agreement—are improvements not easily removable from the premises, and therefore would have been improvident absent an enforceable contract for the sale of the Tiverton property.

Norman also argues that the trial justice erred by considering certain improvements to the Tiverton property made *prior* to the alleged oral agreement. We disagree. The trial justice enumerated the following as improvements supporting the application of the part performance doctrine: French doors were installed, a sun room was appended, the front entry was tiled, a new front door was added, the kitchen was completely overhauled, the bedrooms were refurbished, and the landscaping was improved. When cross-examined, however, Jennifer offered a different, but still substantial, list of improvements rendered after the "actual purchase of the home": The tile in the front entry was laid, the front door was replaced, the new oak banister was installed, the last door in the sun room was hung, and both the master and another bedroom were renovated. We are of the opinion that even this second, albeit less comprehensive, list is sufficient evidence to indicate the existence of an oral agreement.

Finally, even if the improvements by themselves were insufficient to constitute

part performance, some combination of improvements, substantial payment of the purchase price, or possession can be enough. *Najarian*, 48 R.I. at 215, 136 A. at 768. An independent review of the evidence presented in this case leads us to conclude that the oral contract should be honored. Jennifer and Gregory paid Norman $140 per week from June 1, 2001, until April 12, 2002, when the couple reduced the weekly payments to $100; all these payments were deducted from a $70,000 figure, as evidenced by a ledger kept by Norman. Both Jennifer and Gregory testified that this $70,000 was the negotiated purchase price of the property. The purchase price was later reduced by $22,000 to account for a $30,000 home equity loan taken out by Norman, less an $8,000 private loan from Norman to Gregory and Jennifer. We hold that these payments toward the purchase price of the Tiverton property and the several permanent improvements made thereon, together with the continued possession, sufficiently constitute part performance of the oral contract.

We did not easily or quickly conclude that there was sufficient part performance in this case. This was a close and difficult case for this Court. We would advise bench and bar that we consider the statute of frauds to be as important as it is venerable. We shall continue to look with some degree of skepticism upon the claims of any party who seeks to escape from the statutory mandate by invoking an exception.

### C

### Remaining Arguments

■ Norman advances three additional arguments in this appeal. First, he argues that the trial justice committed reversible error by failing to consider Gregory's and Jennifer's judicial admissions that the $140

payments were, in fact, monies toward rent rather than to purchase the Tiverton property. In addition, he contends that the trial justice should have held the oral contract unenforceable because Jennifer's and Gregory's failure to pay adequate rent after April 12, 2002, or any rent after October 4, 2002, constituted a material breach of the oral agreement. Finally, Norman asserts that the trial justice erred by not considering the value of the Tiverton property when determining the purchase price.

"[I]t is an established rule in Rhode Island that this Court will not review issues that are raised for the first time on appeal." *In re Amber P.*, 877 A.2d 608, 619 (R.I.2005) (quoting *Union Station Associates v. Rossi*, 862 A.2d 185, 192 (R.I. 2004)). "Our well settled raise-or-waive rule prevents us from addressing arguments not raised before the trial justice." *State v. Mohapatra*, 880 A.2d 802, 810 (R.I.2005).

None of these arguments was raised before the trial justice. Accordingly, Norman has waived these issues on appeal.[3]

### Conclusion

For the reasons stated herein, the decision of the Family Court is affirmed. Norman shall convey said property to Jennifer and Gregory for the balance due on the purchase price. Because of a mathematical error, the Family Court judgment shall be amended to indicate that the balance due on the purchase price is $39,100. In addition to this amount, Jennifer and Gregory shall pay Norman $7,800 for back rent pursuant to an order of the Family

Court entered on February 7, 2003, for a total amount of $46,900. In accord with the Family Court's final judgment, Jennifer and Gregory shall take title to the Tiverton property subject to the outstanding equity loan, for which Jennifer and Gregory will be jointly and severally liable. The record shall be remanded to the Family Court.

---

**3.** At trial, Norman did attempt unsuccessfully to use Gregory's written objection to Jennifer's motion to add Norman as a party to the divorce to *impeach* Gregory's trial testimony. It is this impeachment attempt that Norman cites as preserving for appeal the argument that the objection's contents contain judicial admissions that must be construed against Gregory. At no time, however, did Norman argue or make an offer of proof to the trial justice that Gregory's written objection contained a judicial admission, and thus the trial justice had no opportunity to make a ruling capable of review by this Court.