June 8, 2018

**Supreme Court**

No. 2016-240-Appeal.
(PC 15-3539)

Vincent R. Coccoli, Sr.        :

v.        :

Town of Scituate Town Council et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Vincent R. Coccoli, Sr.        :

      v.                :

Town of Scituate Town Council et al.    :

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on March 6, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The *pro se* plaintiff, Vincent R. Coccoli, Sr. (plaintiff or Coccoli),[1] appeals from the entry of summary judgment in favor of the defendants (the town or defendants).[2] On appeal, the plaintiff argues that issues of material fact remain which preclude summary judgment and that he is entitled to a trial on the merits of his claims. After hearing the arguments of the parties, examining the memoranda submitted by the parties, and reviewing the record, we are of the opinion that cause has not been shown and that

---

[1] Despite the complex nature of this litigation, the plaintiff chose to proceed *pro se*, against the better recommendation of the trial justice:

> "This [c]ourt has on more occasions than I can remember, what I will call countless occasions, admonished Mr. Coccoli that while he has a right to represent himself that the matters at bar in this case are receivership matters, were extremely sophisticated; and as a result, he could and should obtain qualified counsel."

[2] The plaintiff named the Town of Scituate Town Council and the following individual defendants in his complaint: (1) Charles Collins, Jr.; (2) John F. Winfield; (3) David B. Campbell; (4) Brenda Frederickson; (5) Kathleen Knight-Bianchi; (6) William Hurry; (7) Peter Furness in his capacity as Receiver; (8) Town of Scituate Building Official; and (9) David E. Provonsil.

this case should be decided without further briefing or argument. For the reasons set forth in this opinion, we vacate in part and affirm in part the judgment of the Superior Court.

**Facts and Travel**

The genesis of this case is plaintiff's persistent yet failed attempts to develop the Hope Mill Property located in Scituate, Rhode Island (the property). The plaintiff was a member of Hope Mill Village Associates, LLC (HMVA). In December 2006, the Scituate Zoning Board of Review granted HMVA conditional approval for dimensional relief and special-use permits to allow for the redevelopment of the property. One of the conditions required HMVA to obtain approval from the Scituate Town Council, the West Warwick Sewer Authority, and the Rhode Island Department of Environmental Management (DEM) for a municipal sewer connection from the property to the West Warwick Regional Sewer System. At a regular meeting of the town council held on April 12, 2007, the town council voted to approve the sewer connection, pending receipt of a Memorandum of Understanding (MOU) from HMVA. The minutes of that meeting reflect the vote as follows:

> "After lengthy discussion between the Council, Mr. Robinson and Mr. Geremia, and members of the audience * * * motion was made by Councilman Salisbury, seconded by Councilman Collins, and voted by consent agreement to grant approval of the 40,000 gallon capacity per day, contingent upon receiving a document in writing from Hope Mill Village Associates within 10 days, outlining the specifics previously discussed:
>
> "Extend the sewer connections to Hope Sanitary Associates, Hope Elementary School, Hope Jackson Fire Dept., the Police Station, and to upfront the cost of the Town's portion of the interceptor.
>
> "Any representation made by the Developer regarding the Town of Scituate, should be accurate and reflect what was discussed at this meeting.
>
> "Motion made by Councilman Salisbury, seconded by Councilman Collins and voted by consent agreement to confer with Coventry

and West Warwick to ascertain what their intentions are regarding this upgrade, and to pursue an agreement that would share the costs. The contact should be done by David Provonsil and Legal Counsel."

In July 2007, an MOU was executed between plaintiff and the town. The MOU was signed by the town council president, contained an official town seal, and was recorded in the land evidence records. Under the MOU, plaintiff agreed to "design, procure approvals for, and cause to construct a new sewer line * * *."

By 2010, the property became part of a bankruptcy proceeding; and, in January 2010, the bankruptcy trustee sold the property to New England Development R.I., LLC, which filed receivership proceedings in August 2010. The plaintiff and two other individuals executed a purchase and sale agreement with the receiver with respect to the property, but they defaulted and the receiver terminated the agreement. Subsequently, plaintiff individually executed a purchase and sale agreement for the property, but he defaulted again and the agreement was terminated. In 2014, plaintiff individually executed a third purchase and sale agreement for the property; that agreement was also terminated. In January 2016, the Superior Court approved the receiver's petition to sell the property to BMP, LLC.

On August 13, 2015, plaintiff filed a *pro se* complaint against defendants, alleging promissory estoppel and breach of oral contract, breach of confidentiality pertaining to proprietary information, tortious interference with a contract, and fraudulent misrepresentation. The defendants moved for summary judgment on April 20, 2016, arguing that (1) defendants did not breach the MOU because the town never approved the MOU and, further, that there was no evidence that plaintiff suffered financial harm; (2) plaintiff's claim under § 552a(b) of the Privacy Act of 1974 had no merit because federal law was not applicable to defendants and there was no evidence that defendants disclosed plaintiff's personal information; (3) there was no

evidence that the town council had intentionally interfered with the purchase and sale agreement plaintiff had executed; and (4) plaintiff's fraudulent misrepresentation claim was improper because it was based on the conduct of a nonmunicipal fire chief, who was not a town employee. The plaintiff objected to defendants' motion, and for the first time raised the argument that defendants violated the Rhode Island Uniform Trade Secrets Act,[3] G.L. 1956 chapter 41 of title 6. The defendants' motion for summary judgment was heard on July 11, 2016. At the outset, the trial justice noted what he characterized as plaintiff's "checkered" history:

> "All of the claims evolve out of the plaintiff's efforts over many years to develop, redevelop, the so-called Hope Mill. The history, recent history of the Hope Mill, insofar as judicial proceedings are concerned, is checkered. It has been the subject of receivership proceedings, bankruptcy proceedings, and receivership proceedings again.
>
> "A somewhat common factor running through it has been the pro se plaintiff here. In other circumstances, this [c]ourt has suggested or held that Mr. Coccoli's life is intertwined, to a very great extent, with his desire and his efforts to rehab the mill for multifamily residential purposes primarily, a somewhat monumental task at this point."

The trial justice granted summary judgment in favor of defendants on all four counts of plaintiff's complaint. He first addressed the MOU and found that it was not a binding agreement:

> "The [c]ourt cannot find that that agreement is binding on the defendants. It was not specifically approved by the council, it

---

[3] The trial justice correctly stated that plaintiff erroneously raised the Rhode Island Uniform Trade Secrets Act through his objection to defendants' motion for summary judgment and that the proper avenue for plaintiff to assert a new claim would have been through amending his complaint:

> "In an effort to attempt to rehabilitate his position, Mr. Coccoli seeks to invoke certain state statutes, but he did that not through the means of seeking to amend his complaint, he just makes a bald statement in his memorandum and that does not suffice."

contained no terms; and as a matter of fact, to this day things contemplated there have not occurred."

The trial justice next addressed plaintiff's breach of confidentiality claim:

> "Mr. Coccoli seeks to invoke certain state statutes, but he did that not through the means of seeking to amend his complaint, he just makes a bald statement in his memorandum and that does not suffice. The complaint speaks to specific legislation, specific federal laws that do not touch the Town of Scituate."

With respect to plaintiff's contractual interference claim, the trial justice stated:

> "Although the complaint was that the council was rude to Mr. Coccoli and his partner because some members of the council left the meeting apparently at a time when Mr. Coccoli or his partner were late. But whether late or not, whether they left the meeting or not, that's not grounds for interference with a contractual relation and the failure to enter into a tax stabilization agreement. The town has no obligation to enter into such agreements. That's a matter of legislative determination."

Finally, the trial justice addressed plaintiff's fraudulent misrepresentation claim, stating:

> "The [c]ourt searched the record and fails to find who * * * made representation. Discovery seemed to indicate that the claims predicated on the fact that a non-municipal in the sense of non Scituate fire chief signed a document for the department of environmental management which had printed on the face of it that it was not binding upon the Town and did not constitute notice to the Town. The fire chief was a fire district chief, not a town official."

On July 20, 2016, plaintiff moved to vacate the entry of summary judgment, arguing that he never received a copy of defendants' June 13, 2016 reply memorandum prior to the summary-judgment hearing. A hearing on plaintiff's motion was held on July 22, 2016, and the trial justice denied the motion. Final judgment entered for defendants on that same date. The plaintiff timely appealed.

On appeal, plaintiff contends that the trial justice erred by granting summary judgment because there exist numerous issues of material fact. He also contends that the trial justice

granted summary judgment in error in light of the fact that plaintiff did not receive defendants' reply memorandum until the summary-judgment hearing. Finally, plaintiff reasserts that he and the town have an enforceable contract.

## Standard of Review

"[T]his Court reviews a grant of summary judgment *de novo*." *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013) (quoting *Sacco v. Cranston School Department*, 53 A.3d 147, 149-50 (R.I. 2012)). Further, "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Key v. Brown University*, 163 A.3d 1162, 1168 (R.I. 2017) (quoting *Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I. 2001)). "Although summary judgment is recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" *Sullo*, 68 A.3d at 407 (quoting *Mutual Development Corp. v. Ward Fisher & Co.*, 47 A.3d 319, 323 (R.I. 2012)).

## Analysis

The plaintiff first contends that the MOU is a binding contract that the town subsequently breached. In order to prove a breach of contract claim, "the plaintiff must prove both the existence and breach of a contract, and that the defendant's breach thereof caused the plaintiff's damages." *Fogarty v. Palumbo*, 163 A.3d 526, 541 (R.I. 2017). It is well settled that "the determination of whether a contract exists is a question of law that this Court reviews *de novo*." *Nonnenmacher v. City of Warwick*, 722 A.2d 1199, 1202 (R.I. 1999). "The long-recognized essential elements of a contract are 'competent parties, subject matter, a legal consideration,

mutuality of agreement, and mutuality of obligation.'" *Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250, 1253 (R.I. 1996) (quoting Black's Law Dictionary 322 (6th ed. 1990)).

The trial justice rendered a bench decision in which he found that the MOU was not enforceable:

> "[T]he minutes of that meeting, which appears as an exhibit to Mr. Coccoli's papers, make it abundantly clear to the [c]ourt that there was no final agreement with respect to that. And in fact, the so-called memorandum of understanding upon which he bases much of his argument against the grant of summary judgment with respect to Count I had not been prepared, had not been exhibited to the council, and the council consistent with the affidavit from the town clerk did not pass approval of the memorandum of understanding. And yet, in a subsequent exhibit appended to Mr. Coccoli's papers which deals with some of the same issues, the town solicitor suggests that the document that had been filed on the real estate records was something that was going to run with the land, at least in his opinion.
>
> "The [c]ourt cannot find that that agreement is binding on the defendants. It was not specifically approved by the council, it contained no terms; and as a matter of fact, to this day things contemplated there have not occurred."

The defendants argued, and the trial justice agreed, that because there was not a second vote of the council to reaffirm the MOU, the contract is void. We disagree. It is clear that the council voted to approve the sewer connection contingent upon receipt of an MOU from HMVA, and that contingency was met. As set out above, the minutes of the April 12, 2007 town council meeting reflect this vote:

> "[M]otion was made by Councilman Salisbury, seconded by Councilman Collins, and *voted by consent agreement* to grant approval of the 40,000 gallon capacity per day, *contingent upon receiving a document* in writing from Hope Mill Village Associates within 10 days, outlining the specifics previously discussed:

> "Extend the sewer connections to Hope Sanitary Associates, Hope Elementary School, Hope Jackson Fire Dept., the Police Station, and to upfront the cost of the Town's portion of the interceptor.
>
> "Any representations made by the Developer regarding the Town of Scituate, should be accurate and reflect what was discussed at this meeting.
>
> "Motion made by Councilman Salisbury, seconded by Councilman Collins and *voted by consent agreement* to confer with Coventry and West Warwick to ascertain what their intentions are regarding this upgrade, and *to pursue an agreement that would share the costs*. The contact should be done by David Provonsil and Legal Counsel." (Emphasis added.)

Thereafter, the town and legal counsel for HMVA prepared a detailed MOU that was drafted on the letterhead of the town's solicitor, signed by town council president Robert Budway and plaintiff, notarized, adorned with the official town seal, and recorded in the land evidence records. After the MOU was executed, plaintiff spent approximately $2 million to begin infrastructure and engineering on the project, in furtherance of the MOU. The agreement as set forth in the vote of the council and the MOU is binding upon the town.

The facts in the record before us establish that the council voted to approve by consent agreement the sewer connection, contingent upon receiving an MOU—which was in fact later executed and recorded in the land evidence records—and that there was subsequent part performance under the MOU. *See Richard v. Richard*, 900 A.2d 1170, 1175 (R.I. 2006) (holding that "any partial performance must unequivocally indicate the existence of the purported oral agreement"). We are of the opinion that the facts presented establish that a contract was formed—which is a question of law. In the case at bar, there is no contention that either party was not competent to enter into an agreement. *See Rhode Island Five*, 668 A.2d at 1253. The MOU addressed the subject matter of the contract in depth, and evinced a legal consideration and mutuality of obligation between the parties: in exchange for authorizing the use of 40,000

gallons per day of the town's reserve sewer capacity, plaintiff was obligated to design, procure approvals for, and cause to be constructed a new sewer line. *See id.* Finally, by signing the MOU and notarizing the document, the parties mutually agreed on the terms. *See id.* Accordingly, we vacate the judgment of the Superior Court granting summary judgment in favor of defendants on Count I of plaintiff's complaint.

We now briefly address plaintiff's second claim, that defendants violated the Privacy Act of 1974 by "releas[ing] confidential proprietary information, including appraisals, architectural, engineering and survey work without permission." The trial justice correctly identified this claim as misplaced:

> "The second cause of action involves the so-called privacy act. That act is a federal statute. And much case law has been cited by defendants making it abundantly clear that it applies to federal agencies and not to state agencies or individuals."

It is well settled that "the Privacy Act is specifically limited to actions against agencies of the United States government." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). Moreover, "[t]he civil remedy provisions of the [Privacy Act] do not apply against private individuals, * * * state agencies, * * * private entities, * * * or state and local officials[.]" *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985). "[T]he [Privacy] Act [of 1974] imposes limitations only on agencies of the federal government." *Williams v. New York City Department of Education ex rel. City School District*, No. 12 Civ. 8518, 2013 WL 5226564, at *15 (S.D.N.Y. Sept. 17, 2013). In the case at bar, we are dealing with a local town council and town officials, *not* the federal government. Accordingly, the trial justice properly granted summary judgment in favor of defendants on Count II of plaintiff's complaint.

In Count III of plaintiff's complaint, Coccoli alleged that defendants engaged in tortious interference with a contractual relationship—specifically, his purchase and sale agreement with

the receiver. The plaintiff avers before this Court that "but for the town's interference, [p]laintiff's expectations regarding his proposed development would have been realized." This Court has held that:

> "In order to establish a claim for tortious interference with a contractual relationship, plaintiffs must establish the following four elements: (1) [T]he existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom." *Fogarty*, 163 A.3d at 538 (quoting *Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000)).

The plaintiff alleged in his complaint that he had secured funding for the development of the property that had since gone into receivership and had submitted a deposit to the receiver in June 2014. The crux of plaintiff's claim is that the town council took actions that made the property "unappealing to any potential investor or buyer" and held closed-session meetings with plaintiff and investors that were "frustrating and disappointing" and allegedly resulted in the loss of funds for the project. Finally, plaintiff contends before this Court that the town solicitor "demonstrated an obvious intent to interfere with plaintiff['s] legitimate expectancy of developing the * * * property." The plaintiff's allegations are based in part on his assertions that the town council kept him waiting at a meeting, members of the council left the meeting when plaintiff and his business partner were late, and one town council member made comments about the property that plaintiff interpreted as rude. The plaintiff also alleged that the town council interfered with his purchase and sale agreement by failing to enter into a tax stabilization agreement.

Our careful review of the record reveals that plaintiff did not submit a copy of the purchase and sale agreement to defendants. There is nothing in the record to suggest that defendants were even aware of the alleged contract plaintiff executed with the receiver to purchase the property. *See Fogarty*, 163 A.3d at 538. There is also an absence of any evidence

suggesting that defendants intended to interfere with the contract, or that plaintiff suffered damages as a result of defendants' interference. *See id.* Moreover, the trial justice correctly found that the town was not obligated to enter into a tax stabilization agreement with plaintiff because that is a matter of legislative discretion. Based on the evidence presented, we cannot conclude that defendants intentionally interfered with plaintiff's alleged contract to purchase the property from the receiver. We conclude that the trial justice properly granted summary judgment in favor of defendants on plaintiff's claim for tortious interference with a contractual relationship.

Finally, plaintiff's claim in Count IV of his complaint sounds in fraudulent misrepresentation. To establish a claim for fraudulent misrepresentation, a plaintiff must prove "not only that the defendant had an intention to deceive, but the complainant also must present sufficient proof that the party detrimentally relied upon the fraudulent representation." *Asermely v. Allstate Insurance Co.*, 728 A.2d 461, 464 (R.I. 1999). The plaintiff alleges that he entered into an agreement with the town on November 1, 2011, for the environmental cleanup of an underground storage tank leak, and that this cleanup cost plaintiff approximately $141,000. The plaintiff contends that a closure application for the cleanup was submitted to DEM's Division of Waste Management and contained the signature of the receiver and Donald Campbell, the Hope Jackson fire chief. Again, at the summary-judgment hearing, the trial justice stated:

> "The [c]ourt searched the record and fails to find who supposedly made a representation other than—well, the [c]ourt failed to find who made a representation. Discovery seemed to indicate that the claims predicated on the fact that a non-municipal in the sense of non Scituate fire chief signed a document for the department of environmental management which had printed on the face of it that it was not binding upon the Town and did not constitute notice to the Town. The fire chief was a fire district chief, not a town official."

- 11 -

Notwithstanding the fact that the Hope Jackson fire chief is the chief of a *nonmunicipal*, *volunteer* fire department, and not a town official, the plaintiff has failed to present a scintilla of evidence of any representation from the town, or of the plaintiff's detrimental reliance upon such a representation. Moreover, the following disclaimer is contained in the DEM closure application:

> "This signature, however, does not serve as notice to the city/town, *does not guarantee city/town approval*, and does not relieve you of your obligations to other applicable city/town officials. Any violation, deficiency or requirement which may have been overlooked is also subject to correction under the provision of any applicable code." (Emphasis added.)

The record before us simply is devoid of any representations from the town that would induce the plaintiff to engage in environmental cleanup on the property. The only evidence the plaintiff proffered was a signature of a nonmunicipal fire chief, who is not a town official. Accordingly, we conclude that the trial justice properly granted summary judgment in favor of the defendants on Count IV of the plaintiff's complaint.

## Conclusion

For the reasons set forth herein, we vacate that portion of the judgment of the Superior Court granting summary judgment on Count I of the plaintiff's complaint. We affirm the judgment of the Superior Court dismissing Counts II, III, and IV of the plaintiff's complaint. The papers may be returned to the Superior Court.

Justice Flaherty did not participate.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Vincent R. Coccoli, Sr. v. Town of Scituate Town Council et al. |
| **Case Number** | No. 2016-240-Appeal.<br>(PC 15-3539) |
| **Date Opinion Filed** | June 8, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Vincent Coccoli, Pro Se<br><br>For Defendants:<br><br>Patrick K. Cunningham, Esq.<br>Michael DeSisto, Esq.<br>David M. D'Agostino, Esq. |