Bank of America, N.A.     :

    v.       :

P.T.A. Realty, LLC, et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Bank of America, N.A.                    :

v.                                       :

P.T.A. Realty, LLC, et al.               :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The petitioners, NMLM Realty, LLC (NMLM) and Liberty Title & Escrow Company (Liberty), appeal from a final judgment entered in this receivership action.  The dispute centers on the receiver's sale of commercial property owned by P.T.A. Realty, LLC (P.T.A.) to NMLM, in which NMLM's agent, Liberty, mistakenly failed to list all the municipal taxes owed on the property, resulting in an overpayment of funds to Bank of America, N.A. (the bank).  This matter came before the Supreme Court on January 26, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.  After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the matters at this time without further briefing or argument.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The facts underlying the hassle between the parties are largely undisputed.  In November 2012, at the bank's request, P.T.A. was placed under receivership by the Providence County

Superior Court. The receiver took possession of P.T.A.'s real property located at 10 Rosario Drive, Providence, Rhode Island, along with another "contiguous" parcel located in Cranston (collectively, the property). At that time, the bank had a properly recorded first-position mortgage on the property to secure a loan in excess of $492,000.

On December 5, 2012, the bank filed a motion in the receivership action to approve its secured claim, listing the claim against P.T.A. for the loan on the property and asking "the [r]eceiver to turn over to [the b]ank * * * all monies collected * * * by the [r]eceiver which constitute a part of and/or proceeds of [the b]ank's collateral * * *" less reasonable fees and expenses, which were attributable to the sale of the property. In exchange for the proceeds of the sale, which amount was uncertain at the time, the bank agreed to discharge its mortgage on the property and write off its losses on its secured claim.

On September 30, 2013, the Superior Court entered an order approving the sale of the property to NMLM for $400,000. Per the purchase and sales agreement, the receiver was required to convey his title to the property free and clear of all liens and "claims for municipal real estate or tangible property taxes." NMLM, as purchaser, was required to pay all municipal taxes from the purchase price. The order approving the purchase and sales agreement also stated, "[a]ll claims, interests, liens, mortgages, and encumbrances asserted against the [p]roperty are released and discharged" upon the sale of the property.

NMLM hired Liberty to, among other things, prepare the settlement statement, calculate outstanding taxes, disburse funds from the closing, pay any taxes due on the property, and purchase title insurance. Following the sale on October 17, 2013, and, importantly, based on the settlement statement prepared by Liberty, the receiver collected proceeds amounting to

approximately $293,982.[1]  A receiver's deed reflecting the transaction was recorded on October 18, 2013.  In accordance with its agreement, the bank had discharged its mortgage on the property on October 11, 2013.  The bank initially received $255,000 in proceeds from the sale of the property.  Two months later, in December 2013, it received an additional $4,418, for a total of $259,418, to offset its secured claim on the property.  Ultimately, the bank wrote off the balance of its claim, an amount in excess of $188,000.

It appears, however, that Liberty improperly prepared the settlement statement and failed to list substantial taxes—approximately $80,000—that were due and owing on that portion of the property located in Providence.  Thus, in response to the receiver's first and final report and request for fees filed in February 2014 (some four months after the closing), NMLM filed a motion which asserted, <u>inter alia</u>, that the receiver should be held in contempt, that the bank had been unjustly enriched, and that the court should order the bank to return the "excess funds," namely, the approximately $80,000 that should have been used to pay the taxes owed on the property at closing.  The hearing justice denied NMLM's contempt motion, but NMLM pressed on and filed a further petition in the receivership action for restitution against the bank, which Liberty incorporated in its own petition for restitution against the bank.  It is these petitions that are the subject of the present appeal.

At the hearing on the petitions, the bank argued that, as a third-party creditor not aware of Liberty's error in calculating the taxes, it was not obligated to return any funds disbursed to it by the receiver following the sale of the property.  NMLM argued that the bank was not an innocent third party because the court order approving the purchase and sales agreement required that the property be conveyed free and clear of any liens and the bank knew it was only entitled to the net

---

[1] This figure includes $273,982 in proceeds given to the seller at closing, plus $20,000 in earnest money held by the seller.

proceeds of the sale after any liens and taxes had been paid. Furthermore, NMLM argued that the bank did not change its position based on the mistaken disbursement of funds because it discharged its mortgage prior to the sale of the property and without knowing how much it stood to receive in proceeds.

In a bench decision on June 24, 2014, the hearing justice ruled in favor of the bank. He found that the bank had not changed its position following the overpayment of funds because it "clearly was prepared to accept whatever was excess after the closing and signed discharges of its mortgage[] * * * before it knew what the proceeds * * * would be." The hearing justice went on to say that NMLM's claim should have been brought against its title insurer, given that it was NMLM's agent, Liberty, that had caused the error.

Final judgment in the receivership action was entered on July 17, 2014. NMLM and Liberty filed a timely joint notice of appeal on July 31, 2014.

**II**

**Standard of Review**

"[I]t is well settled that [t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *." South County Post & Beam, Inc. v. McMahon, 116 A.3d 204, 210 (R.I. 2015) (quoting JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1141 (R.I. 2014)). "A trial justice's findings on questions of law, however, are reviewed de novo." Haviland v. Simmons, 45 A.3d 1246, 1256 (R.I. 2012) (quoting Fleet National Bank v. 175 Post Road, LLC, 851 A.2d 267, 273 (R.I. 2004)).

**Analysis**

To be clear, the bank does not deny its good fortune in receiving an additional $80,000. Rather, the bank argues that it is insulated from a restitution claim as a third-party creditor that received the payment in good faith and without notice of Liberty's error. At the outset, NMLM and Liberty argue that Liberty's mistake in calculating the taxes owed on the property does not bar them from recovering on a claim for restitution. NMLM and Liberty posit that the bank should be ordered to return the excess funds because the bank did not change its position in reliance on any particular amount of proceeds from the sale of the property before discharging its mortgage. NMLM further argues that the bank was not an innocent third-party payee because it was on notice, per the purchase and sales agreement and the court's order in the receivership action approving the sale, that any taxes owed on the property needed to be paid before any proceeds from the sale were disbursed to it.

"Liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." Zambarano v. Retirement Board of Employees' Retirement System of Rhode Island, 61 A.3d 432, 438 (R.I. 2013) (quoting Restatement (Third) Restitution and Unjust Enrichment § 1 cmt. a at 3 (2011)). "To recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances 'that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.'" Emond Plumbing & Heating, Inc. v. BankNewport, 105 A.3d 85, 90 (R.I. 2014) (quoting Dellagrotta v. Dellagrotta, 873 A.2d 101, 113 (R.I. 2005)).

NMLM and Liberty are correct insofar as we have said that "[a] person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care." Toupin v. Laverdiere, 729 A.2d 1286, 1288-89 (R.I. 1999) (quoting Restatement of the Law, Restitution § 59 (1937)). Yet, we have also stated that "[o]ne who receives money in good conscience and has practiced no deceit or unfairness in obtaining it is under no legal obligation to return it to one from whom it has been obtained by deceit on the part of another." Id. at 1288 (quoting Smith v. Pendleton, 53 R.I. 79, 86, 163 A. 738, 740 (1933)). A similar protection has been proposed for creditors who mistakenly receive payments without knowledge of the error; for example, Restatement (Third) Restitution and Unjust Enrichment § 67 at 558 (2011) recognizes a creditor's defense to a restitution claim "to which it would otherwise be subject * * * to the extent that (a) the payee accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor * * *" provided that the creditor did not have knowledge of the mistake.

Here, there is no reason to believe that at the time the proceeds from the sale were disbursed the bank knew that it was receiving an overpayment of funds. NMLM and Liberty argue that the bank was on notice of the overpayment because the purchase and sales agreement and the order approving the sale of the property required that municipal taxes be paid from the proceeds of the sale and that all liens against the property were to be released and discharged upon its sale. However, even if the bank was aware that taxes were to be paid on the property before it received any proceeds, it does not follow that it had reason to know that any taxes were actually owed on it.[2] Thus, the bank received the excess funds in good faith, and NMLM and

---

[2] NMLM and Liberty also suggest that the bank knew there were outstanding taxes owed on the property because the City of Providence filed a proof of claim for municipal taxes in early 2012.

Liberty cannot seek the return of their erroneous payment predicated on the theory of unjust enrichment.[3]  See The National Bank v. FCC Equipment Financing, Inc., 801 N.W.2d 17, 21 (Iowa Ct. App. 2011) ("[A] creditor should be able to treat funds credited in apparent payment of a debt as irrevocably his, unless news of the error precedes [payment].  Costs of errors should be borne by those who make errors * * * rather than by innocent beneficiaries." (quoting General Electric Capital Corp. v. Central Bank, 49 F.3d 280, 284 (7th Cir. 1995))).  Accordingly, the hearing justice properly denied NMLM and Liberty's petitions for restitution.[4]

## IV

## Conclusion

For the aforementioned reasons, we affirm the decision of the Superior Court.  The papers in this case shall be returned to that court.

---

However, because they were not listed, the settlement statement prepared by Liberty suggested that these outstanding taxes had been resolved.

[3] It is not clear why NMLM has not filed a claim against Liberty, which apparently caused the error, or NMLM's title insurance carrier.

[4] Our conclusion is further reinforced given that this claim arises from a receivership action.  We appreciate the need for finality in insolvency actions and are hesitant to scrutinize after the fact the propriety of a receiver's distributions to creditors.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**      Bank of America, N.A. v. P.T. A. Realty, LLC, et al.

**CASE NO:**      No. 2014-293-Appeal.
(PB 12-5438)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  February 19, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

      Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

      For Petitioners:  Richard L. Gemma, Esq.
                          Kelly A. Carden, Esq.

      For Respondents:  Barry J. Kusinitz, Esq.
                            Christopher J. Zangari, Esq.