**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 20, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ERICSSON, INC.,

Plaintiff - Appellant,

v.

COREFIRST BANK & TRUST,

Defendant - Appellee.

No. 17-3181
(D.C. No. 2:15-CV-09301-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH,** Chief Judge, and **BALDOCK & HOLMES**, Circuit Judges.

This case arises from a mistaken overpayment that the plaintiff-appellant, Ericsson, Inc. ("Ericsson"), deposited into the bank account of non-party Stutler Technologies ("Stutler"). Stutler maintained its bank account with defendant-appellee CoreFirst Bank & Trust ("CoreFirst"), to whom Stutler owed a number of debts. Without knowing that the deposited money represented an overpayment,

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

CoreFirst took the money from Stutler's bank account in partial repayment for the debts. Ericsson eventually discovered that it had overpaid Stutler and now wants the overpayment back from CoreFirst. The district court denied Ericsson relief, finding that CoreFirst was protected by the bona fide payee defense set forth in § 67 of the Restatement (Third) of Restitution and Unjust Enrichment ("Third Restatement"). We agree with the district court and, exercising jurisdiction under 28 U.S.C. § 1291, **affirm** both the district court's grant of summary judgment in favor of CoreFirst and its denial of Ericsson's own related motion for summary judgment.

## I

The facts in this case are largely undisputed. Ericsson is a Delaware corporation with its principal place of business in Plano, Texas.[1] Ericsson had a business relationship with Stutler, under which Stutler sold Ericsson's products and services in return for commissions. Ericsson would remit Stutler's commissions to Stutler's bank account with CoreFirst. CoreFirst is a bank incorporated in Kansas, with its principal place of business in Topeka, Kansas.

In December 2013, Ericsson remitted an electronic payment to Stutler worth $217,028.29, depositing this sum of money into Stutler's CoreFirst bank

---

[1] Before the district court, the parties stipulated to the salient facts at issue in this case. *See* Aplt.'s App. at 16–19 (Pretrial Order, dated Jan. 4, 2017). We rely upon these stipulated facts for purposes of the present appeal.

account. A day after this deposit was made, CoreFirst deducted $191,623.49 from Stutler's bank account and applied this amount against Stutler's outstanding debts to CoreFirst. CoreFirst did not know that the funds it had just taken from Stutler's account were the product of an overpayment; indeed, it would not discover this fact until March 2014, when notified by Ericsson. Specifically, when Ericsson learned that it had overpaid Stutler, it informed Stutler and CoreFirst of this fact. And in May 2014, Ericsson sent a formal demand to CoreFirst requesting return of the overpayment.

Ericsson also sent a demand for payment to Stutler, and when Stutler did not reimburse Ericsson for the overpayment, Ericsson filed suit against it in Texas state court. In July 2015, Ericsson prevailed in this litigation, winning a judgment of $122,801.97, plus attorneys' fees, against Stutler. But Stutler has not made any payments to Ericsson based on this judgment.

Separately, Ericsson filed suit against CoreFirst on October 1, 2015, in federal court pursuant to diversity jurisdiction. Ericsson's complaint alleged three claims: conversion, money had and received, and unjust enrichment. The district court granted in part CoreFirst's motion to dismiss, dismissing Ericsson's conversion claim. Subsequently, CoreFirst moved for summary judgment against the remaining claims, and in July 2017, the district court granted CoreFirst's motion, denied Ericsson's own motion requesting summary judgment in its favor, and entered judgment in CoreFirst's favor. Ericsson now appeals from the district

3

court's grant of summary judgment in favor of CoreFirst and that court's denial of Ericsson's motion for summary judgment.

## II

We review the district court's summary-judgment orders de novo and use the same standards as the district court. *See Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We consider the facts in the light most favorable to the nonmovant and draw all reasonable inferences in favor of the nonmoving party. *See Keith v. Koerner*, 843 F.3d 833, 852 (10th Cir. 2016). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III

The district court granted summary judgment to CoreFirst after finding that the bona fide payee defense applied to shield that company. The parties stipulated that Kansas law governed the resolution of the substantive issues in the

4

case. The district court acknowledged that Kansas courts have "not expressly adopted" the Third Restatement's bona fide payee defense but predicted that they would do so in light of Kansas courts' reliance on "various provisions of the Restatement (First) of Restitution" and their having cited to the Third Restatement.[2] Aplt.'s App. at 324 (Mem. & Order, dated July 19, 2017). On appeal, Ericsson does not contest that Kansas courts would apply the Third Restatement.

Under § 67 of the Third Restatement:

> (1) A payee without notice takes payment free of a restitution claim to which it would otherwise be subject, but only to the

---

[2] We note that, quite apart from the Restatement, arguably a seminal Kansas Supreme Court ruling in an analogous setting also provided an independent ground for CoreFirst to contest Ericsson's claim to restitution. *See Kimmel v. Bean*, 75 P. 1118, 1121 (Kan. 1904) (holding that "a bank which receives from an agent for deposit in his own name the money of his principal, without notice of the agency, is protected in applying it to a past-due debt of the depositor"). More specifically, *Kimmel* arguably recognizes the principle underlying the bona fide payee defense: that a creditor who takes payment without knowledge that a third party has claims to the funds underlying that payment is not liable to the third party in restitution or unjust enrichment. Though *Kimmel* dates back to the early 1900s, Kansas courts have continued to cite it favorably and rely on it, even in recent decades. *See, e.g., Sprague v. Farm Credit Servs. of Cent. Kan. PCA*, 22 P.3d 608, 611–12 (Kan. Ct. App. 2001) (citing to and quoting from *Kimmel*); *Hubbard v. Home Fed. Sav. & Loan Ass'n*, 704 P.2d 399, 405 (Kan. Ct. App. 1985) (same). However, in the district court, neither the parties nor the court cited to *Kimmel*, and the parties have elected to litigate their dispute on appeal solely with reference to the Restatement and, in particular, under the Third Restatement's § 67. Accordingly, we are content to resolve their dispute with the same focal point. With that said, at the very least, *Kimmel* would seemingly provide further support for the district court's prediction that the Kansas courts would follow the rule of § 67.

5

extent that

> (a)   the payee accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor or of another person;
>
>       . . . .
>
> (2)   A payee is entitled to the defense described in this section only if payment becomes final, and the payee learns of the payment and its ostensible application, before the payee has notice of the facts underlying the restitution claim the defense would cut off. For purposes of this subsection, a payment becomes final when the payor is no longer entitled to countermand or recover it without the aid of legal process.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 67 (Am. Law Inst. 2011) [hereinafter THIRD RESTATEMENT].  As one court explained, § 67's bona fide payee defense furnishes "protection . . . for creditors who mistakenly receive payments without knowledge of the error"—specifically, § 67 "recognizes a creditor's defense to a restitution claim 'to which it would otherwise be subject' . . . provided that the creditor did not have knowledge of the mistake." *Bank of Am., N.A. v. P.T.A. Realty, LLC*, 132 A.3d 689, 693 (R.I. 2016) (quoting THIRD RESTATEMENT § 67).  The underlying rationale of this rule is that the "[c]osts of errors should be borne by those who make errors . . . rather than by innocent beneficiaries." *Nat'l Bank v. FCC Equip. Fin., Inc.*, 801 N.W.2d 17, 21 (Iowa Ct. App. 2011) (quoting *Gen. Elec. Capital Corp. v. Cent. Bank*, 49 F.3d 280, 284 (7th Cir. 1995)).

By its plain terms, the bona fide payee defense applies to the facts of this case.  CoreFirst accepted funds from Stutler, in partial satisfaction of Stutler's

6

debts owed to CoreFirst, and did so without knowledge of the fact that the funds it was taking were the result of an overpayment on the part of Ericsson. As such, CoreFirst is entitled to those funds "free of a restitution claim." THIRD RESTATEMENT § 67; *accord id.* cmt. d ("The rule of § 67 cuts off what would otherwise be a valid restitution claim that is typically based on fraud, mistake, misappropriation of financial assets, or breach of fiduciary obligation.").

Ericsson makes several arguments for why the bona fide payee defense does not apply to this case. However, none are availing.

## A

Ericsson's first argument is that because CoreFirst "never acquired rights to the overpayment," it cannot assert a § 67 defense. Aplt.'s Opening Br. at 11. In support of this contention, Ericsson offers a single, unpublished case from a different jurisdiction, *General Motors, L.L.C. v. Comerica Bank*, 2010 WL 5174515 (Mich. App. 2010) (unpublished). However, *Comerica Bank* fails to vindicate Ericsson's position.

The facts of Comerica Bank do bear a resemblance to the instant case. The plaintiff, General Motors ("GM"), overpaid a supplier by making deposits to the supplier's Comerica Bank account. Comerica applied those payments to the supplier's revolving credit loan with Comerica. The supplier declared bankruptcy, and GM sued Comerica for unjust enrichment to recover the amount of the overpayments. In defense, Comerica did not rely upon a bona fide payee

7

defense or invoke any provision of the Restatement of Restitution and Unjust Enrichment (i.e., Comerica did not assert a defense under either the First or the Third Restatement).

Instead, Comerica argued that the Uniform Commercial Code ("UCC") shielded it from liability for unjust enrichment. The Michigan Court of Appeals was unpersuaded, holding that Comerica failed to point to "anything in [the UCC] that could be said to have displaced GM's unjust enrichment claim." 2010 WL 5174515, at *4. That holding is of no value to Ericsson, however, for several reasons. In the first place, an unpublished, out-of-state ruling is not, as Ericsson would have it, "factually and legally dispositive of Ericsson's claims," Aplt.'s Opening Br. at 10–11, because Kansas law, not the law of Michigan, applies to the present suit. Moreover, *Comerica* is inapposite because that case did not involve § 67 or the bona fide payee defense; instead, the court's resolution turned on the application of the UCC. Thus, Ericsson's reliance on *Comerica* is misplaced.

**B**

Ericsson next argues that even if CoreFirst had rights to the overpayment, § 67 still would not apply because of CoreFirst's status as a "transferee" of the overpayment. In other words, Ericsson claims that because "[t]here were two transfers of money here"—the first being the overpayment from Ericsson to Stutler, and the second being CoreFirst's deduction from Stutler's bank account—

8

§ 67 does not apply.  Aplt.'s Opening Br. at 13.

Ericsson rests its argument on the original discharge for value rule, found in § 14 of the Restatement (First) of Restitution.  That rule states, in relevant part, that:

> A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

RESTATEMENT (FIRST) OF RESTITUTION § 14 (Am. Law Inst. 1937).  Ericsson argues that this language requires a "third person," (i.e., Ericsson) to have directly paid the "creditor of another," i.e., CoreFirst, and that it does not contemplate a scenario in which a third person pays the debtor, who then in turn transfers payment to the creditor.  Aplt.'s Opening Br. at 15.  As a consequence, Ericsson insists that, under the terms of the discharge for value rule, "the [only] proper transaction to consider is Ericsson's payment to Stutler" because Ericsson only directly paid Stutler, and CoreFirst never gave value to Ericsson.  Aplt.'s Reply Br. at 8.

This argument misses the point.  CoreFirst did not assert the First Restatement's discharge for value rule as an affirmative defense; it chose the modern-day bona fide payee defense of § 67.  And Ericsson has not quarreled with the district court's prediction that the Kansas courts would embrace § 67 as

9

the governing law on these facts. Nothing in § 67's text, which embodies the bona fide payee defense, evinces the limitations inherent in the text of the discharge for value rule under § 14. In other words, nothing in § 67 suggests that the bona fide payee defense does not operate in situations where there has been more than one payment. The Rhode Island Supreme Court's *P.T.A. Realty* case aptly underscores this point.

In *P.T.A. Realty*, at the bank's request, a state court placed the bank's borrower in receivership. *See* 132 A.3d at 691. The receiver took possession of the borrower's property and put it up for sale. The eventual buyer agreed to pay all municipal taxes stemming from the purchase price, and the bank was to receive the net proceeds of what remained from the sale. The buyer hired an agent to calculate the outstanding taxes, to pay such taxes on its behalf, and then to disburse funds from the closing. The agent performed its calculations, made the requested deductions, and sent the remainder to the receiver. The receiver sent the net proceeds to the bank, and the bank promptly applied the proceeds to offset its secured claim on the borrower's property. After the bank did so, the buyer's agent realized it had miscalculated the taxes and that the bank had received an additional $80,000 in proceeds that should have gone to pay taxes. *See id.* at 692.

The buyer sought restitution of the $80,000 overpayment under a theory of unjust enrichment. The bank asserted that it was a third-party creditor who took

payment without any notice of an error in tax calculations. *Id.* Invoking the rationale of § 67, the Rhode Island Supreme Court found for the bank. *Id.* at 693. Critically, the facts of *P.T.A. Realty* involved no direct payment. The claimant (buyer) never directly paid the transferee (bank); the buyer sent payment to the receiver, who then deposited the net proceeds with the bank. Just as here, the fact that the bank was a transferee of the payment to the receiver was of no moment.

Beyond *P.T.A. Realty*, § 67's commentary supports the inference that transferees receive protection under the bona fide payee defense. Illustration 2 under comment d highlights this point: "Thief robs Bank to obtain the money to pay his taxes. The taxes are paid partly in stolen cash, partly in instruments obtained with stolen cash. Taxing Authority is not liable in restitution if it received payment without notice of Bank's claim." THIRD RESTATEMENT § 67 cmt. d. Similarly, Illustration 3 describes a scenario under which a trustee illicitly pays a creditor with money from the trust account. If the creditor takes this money without notice of where the money came from, the creditor will not be liable in restitution to the trust's beneficiary. *Id.* In neither of these illustrations was there a direct payment from the party ultimately seeking restitution to the party asserting a bona fide payee defense; yet, the commentary makes clear that the defense still operates to protect the party that took payment without notice.

Thus, we agree with CoreFirst that the protections of the bona fide payee rule are not obviated for want of a direct payment from the claimant to the payee

11

or a direct transfer of value from the payee to the claimant. As relevant here, whatever limitations § 14 imposes on a transferee's ability to assert the discharge for value defense do not extend to the context of § 67. In other words, nothing in the text of § 67 suggests a similar limitation, and in light of the logic of *P.T.A. Realty* and the commentary to the Third Restatement, we hold that CoreFirst is not disqualified from asserting the bona fide payee defense as a transferee.

C

Ericsson's third argument for why the bona fide payee defense does not protect CoreFirst is that § 67 requires a voluntary payment between the payor and the payee in order to be effective. More specifically, Ericsson points to § 67's language that shields a payee from a restitution claim where the "payee without notice takes payment free of a restitution claim to which it would otherwise be subject." THIRD RESTATEMENT § 67(1). Ericsson highlights the word "payment" and interprets this word to mean "the performance 'of an obligation by the delivery of money.'" Aplt.'s Opening Br. at 18 (quoting *Payment*, BLACK'S LAW DICTIONARY (10th ed. 2014)). The word "delivery," in turn, "means the 'formal act of ***voluntarily*** transferring something.'" *Id.* (emphasis in original) (quoting *Delivery*, BLACK'S LAW DICTIONARY (10th ed. 2014)). Based on this alchemic exercise with § 67's language, Ericsson arrives at the conclusion that § 67 requires a voluntary payment between the payee and the party owing money to the payee. We are unpersuaded.

12

First of all, Ericsson fails to call our attention to any case holding that the bona fide payee defense requires a voluntary payment between the payor and the payee, and we are aware of no such case. Moreover, even if such a voluntary payment were required, we would conclude that one was present here. The security agreements underlying the loans from CoreFirst to Stutler allowed CoreFirst "a right of setoff in all [Stutler's] accounts with [CoreFirst] (whether checking, savings, or some other account)." Aplt.'s App. at 109 (Promissory Note, filed Jan. 27, 2017). In the agreements, Stutler also authorized CoreFirst "to charge or setoff all sums owing on the indebtedness against any and all such accounts." *Id.* In light of this agreement, in which Stutler authorized CoreFirst to deduct money from Stutler's bank account to satisfy Stutler's debts with CoreFirst, we would be hard-pressed—absent any evidence to the contrary—to conclude that the transfer of money from Stutler's account to CoreFirst was not voluntary. Accordingly, Ericsson's argument that CoreFirst's § 67 defense fails for want of a voluntary payment has no merit.

**D**

Ericsson's final argument as to why the district court wrongly granted summary judgment to CoreFirst is that the court incorrectly concluded that CoreFirst "setoff" the funds in Stutler's bank account, even though the law of setoff was not at issue in this case. In essence, Ericsson points to a single line from the district court's decision, where that court stated: "Regardless of whether

13

a Stutler representative authorized that particular payment, [CoreFirst] exercised its setoff rights to apply funds from Stutler's account toward its indebtedness." Aplt.'s App. at 327. Ericsson reasons from the district court's use of the term "setoff" that the court was erroneously invoking the affirmative defense of setoff to CoreFirst's benefit, even though CoreFirst had never pleaded such a defense.

Ericsson misunderstands the district court's use of the term "setoff," however. The court was simply referring to "setoff" as that word was used in the security agreement between CoreFirst and Stutler. *Id.* at 109 (referring, in the security agreement, to CoreFirst's right "of setoff in all [Stutler's] accounts"). The district court did this to make the point that CoreFirst exercised its rights under its agreement with Stutler, to deduct money from Stutler's account in order to pay down Stutler's debts to CoreFirst, and did so without knowledge that this deducted money was the product of an overpayment. Whether CoreFirst could have asserted an affirmative defense of setoff or whether "CoreFirst's seizure of funds from [Stutler's] Bank Account" was or "was not a setoff," as that defense might be defined in Kansas law, is beside the point. Aplt.'s Opening Br. at 22. The district court's reference to the term "setoff" was merely a recapitulation of the agreement between Stutler and CoreFirst, and does not carry the legal significance Ericsson imputes to it.

\* \* \*

In sum, we conclude that the bona fide payee defense applies to the facts of

14

this case, insulating CoreFirst from Ericsson's demand for restitution. And Ericsson's arguments in opposition to such an outcome are unavailing.

## IV

Before the district court, Ericsson moved for summary judgment in its own favor for unjust enrichment and money had and received. *See* Aplt.'s App. at 27 (Pl.'s Mot. for Summ. J., dated Jan. 27, 2017). Ericsson also requested prejudgment interest and the attorneys' fees it incurred in its suit against Stutler. *Id.* at 39. The district court denied Ericsson's motion, and Ericsson now appeals from that determination. We have no difficulty concluding that the district court properly refused to grant summary judgment in favor of Ericsson on Ericsson's unjust enrichment, money had and received, and prejudgment interest claims—because, as we explained *supra*, it is CoreFirst that is entitled to summary judgment against these very claims.

We also conclude that Ericsson is not entitled to the attorneys' fees it incurred during its lawsuit against Stutler. Kansas follows the so-called "American Rule" in the award of attorneys' fees. *Robinson v. City of Wichita Emps. Ret. Bd. of Trs.*, 241 P.3d 15, 24 (Kan. 2010) (holding that "[t]he 'American Rule' is well established in Kansas"). Under this Rule, "in the absence of statutory or contractual authorization, each party to litigation is responsible for his or her own attorney fees." *Farm Bureau Mut. Ins. Co. v. Kurtenbach By and Through Kurtenbach*, 961 P.2d 53, 63 (Kan. 1998) (citing

15

*T.S.I. Holdings, Inc. v. Jenkins*, 924 P.2d 1239 (Kan. 1996)). As Ericsson points out, the Kansas Supreme Court has recognized an exception to this general rule; attorneys' fees are recoverable "where the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant." *Hawkinson v. Bennett*, 962 P.2d 445, 456 (Kan. 1998) (quoting *Duggan v. Rooney*, 749 F. Supp. 234, 241 (D. Kan. 1990)). The *Hawkinson* Court elaborated:

> If one's property is taken, injured or put in jeopardy by another's neglect of duty imposed by contract, or by his wrongful act, any necessary expense incurred for its recovery, repair or protection is an element of the injury. It is often the legal duty of the injured party to incur such expense to prevent or limit the damages; and if it is judicious and made in good faith, it is recoverable, though abortive.

*Id.* (quoting *Duggan*, 749 F. Supp. at 241); *accord McOsker v. Fed. Ins. Co.*, 224 P. 53, 55 (Kan. 1924).

Recently, the Kansas Court of Appeals established a four-part test to determine whether the third-party litigation exception applies. Under this test:

> In order for the exception to apply, a plaintiff must show that (1) the defendant committed a tort or violated a contractual duty; (2) third-party litigation is the natural and proximate consequence of the defendant's wrongdoing; (3) it was necessary for the claimant to engage in the third-party litigation; and (4) the claimant exercised good faith in the third-party litigation.

*Harder v. Foster*, 401 P.3d 1032, 1051 (Kan. Ct. App. 2017).

Ericsson's bid for attorneys' fees from the Stutler litigation fails under the

16

first prong of this test—that is, Ericsson cannot show that CoreFirst "committed a tort or violated a contractual duty." *Id.*  CoreFirst was well within its rights to keep the money it had deducted from Stutler's account.  Thus, Ericsson is not entitled to recover from CoreFirst the attorneys' fees Ericsson incurred in its suit against Stutler.

V

In conclusion, we hold that the bona fide payee defense shields CoreFirst from liability in this case, and that Ericsson, and not CoreFirst, must bear the burden of Ericsson's mistaken overpayment to Stutler.  Accordingly, we **AFFIRM** the district court's grant of summary judgment in favor of CoreFirst and **AFFIRM** that court's denial of summary judgment to Ericsson.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge